SUSAN COIL v. EPENETUS WALLACE.

1. A promise of marriage may be inferred by a jury from circumstances and conduct and expressions: and when circumstances and conduct and conversation from which such promise may be inferred are submitted to a jury, their verdict will not be set aside, although such conduct and conversation may admit of another explanation.

2. It is unnecessary, in an action for a breach of promise to marry, to prove an actual request and refusal: it is sufficient if there appear by the conduct of the parties and by circumstances an unequivocal intention of the defendant not to perform his contract.

3. In an action for a breach of promise to marry, the seduction of the plaintiff may be given in evidence in aggravation of the damages. In this respect, this action differs from other actions on contract, and partakes more of the nature of an action for *tort;* and the verdict is never confined to the mere *pecuniary damage* for the breach of the contract, which would be the value of the marriage.

4. A verdict will not be set aside for the admission of illegal evidence at the trial, if no objection was then made to its admission.

This was an action brought in this court, by the plaintiff against the defendant, in case, for breach of promise of marriage. The declaration was filed December 20th, 1852, and contains three counts. The first count sets forth that the defendant promised to marry upon request; the second count that the promise was to be fulfilled within a reasonable time; and the third count sets forth a general promise to marry (*pro ut* the declaration). To this declaration the defendant pleaded the general issue, and the cause was brought on for trial at the Morris county circuit, at the April term, A. D. 1853, before Justice Ogden.

Evidence was given, on the part of the plaintiff, proving that the defendant had visited her from April, 1851, until May, 1852. These visits were sometimes once or twice a week, sometimes once a fortnight; that she visited her brother, at Easton, from January to March 10, 1852; that the defendant had visited her there; that he walked out and rode out with her; that he was in the habit of sitting alone with her in her bed-room after the family had retired and until near morning; that, on one of these occasions, her brother went through her room, and found them in bed together, with the light out; her mother testified that, upon another occasion, defendant came

there after the plaintiff had retired, went into her bed-room, where her clothes were brought to her, and in his presence she dressed herself, and then walked out with him.

The plaintiff's brother testified that, in September, 1851, he took her to see a travelling circus, where they met the defendant, in whose charge he left her, defendant saying to him, " I will see her home; I will take care of her; she is mine, you know."

It was proved that defendant left the neighborhood in May, 1852, and went to Newark to work at his trade, and never afterwards visited the plaintiff; and that the plaintiff had not been visited by any other young man since her return from Easton until then; that the plaintiff became pregnant in 1852: her child was born December 10, 1852.

There was no proof that the plaintiff, or any one for her, had ever requested the defendant to marry her. She went with her brother and her attorney to Newark, in July, 1852, on this business. Her attorney went to Wallace, and asked him if he was Mr. Wallace. He said " yes." The attorney said he heard he had been getting married, and asked if this was so. Defendant replied, " he supposed that was so." The attorney, being satisfied that he was married, and fearing that defendant was getting suspicious and alarmed, said nothing further of the business upon which he came.

It was also proved by the witnesses for the plaintiff that D. S. and N. S. and others, young men, had been in the habit of visiting her before she went to Easton, as often as once in two weeks.

It was shown that defendant endeavored to avoid being arrested on the *capias;* and when arrested, and informed of the cause, he said he would not marry her; that he did not think he was the man; that other young men had been with her.

The defendant moved to non-suit—(1) because there was no evidence of a contract; (2) because there was no evidence of a request to marry, or of any thing to dispense with such request; which motion was refused by the court.

The defendant, on his part, by several witnesses of both sexes, gave evidence of improper and indelicate conduct on

Coil v. Wallace.

the part of the plaintiff, and two of said witnesses, D. L. and N. S., the young men who had been proved by the plaintiff's mother and brother to have been in the habit of visiting her, testified that they had each, on several occasions, had criminal intercourse with the defendant.

The cause was submitted to the jury upon the following charge from the circuit judge :

The important and perhaps the most difficult task for you to perform will be to keep your mind's eye upon the *gist* and essence of this suit, and thus obtain a just conception of the rights of the plaintiff and of the liability of the defendant.

It is not an action at large, in which a recovery can be had upon evidence showing that female virtue has been invaded, female reputation been tarnished, or family hopes and prospects been deferred or darkened. It may be that parental affection, pure morality, and a delicate appreciation of chastity, and of the just expectation from the marital bed, would impel you irresistibly to the condemnation of a seducer ; yet it must be borne in mind that by no law, either common or statutory, obtaining in this state, can an action be maintained by an injured female, however pure before, against her faithless seducer, however vile and heartless, for her defloration and the beguilement which may have secured the priceless sacrifice.

It will be unprofitable for us to appropriate this occasion in lamenting that a remedy has not been provided by our legislature for an unfortunate female against her destroyer.    The problem, whether such remedy has been thus long withheld because the protection of the virtue of their daughters and sisters has not sufficiently occupied their deliberations when engaged in devising and enacting wholesome laws, or whether because sound wisdom has suggested that, instead of making foul seductions less frequent, a motive might thus be provided for artful and unprincipled females falsely to charge innocent men, for the purpose of obtaining pecuniary compensation by hush money or by verdicts, need not now be solved.

It is sufficient for me, in discharge of my office, to say, that no such action can be maintained in New Jersey.    A false pretence of courtship and of an intention to marry, leading to

an illicit intercourse, is not a ground of action, unless there be such additional testimony as will legally sustain a finding by the jury that mutual promises of marriage had been made, founded upon considerations other than of cohabitation.

However much the victim of a libertine may have suffered in public estimation or from the stings of an upbraiding conscience, she nevertheless must be exhibited as led by deception into the voluntary commission of the statutory offence of fornication.

She appears as a partaker of the crime, and, on the principles of the common law, she cannot obtain pecuniary satisfaction for a supposed injury to which she was consenting. No person can recover damages for the default or negligence of another, if such claimant has been guilty of a want of ordinary care in protecting himself from the act causing the injury, much less where he has been an agent in producing the mischief.

An action, however, will lie in favor of either male or female for a breach of promise to marry, and proper damages may be recovered upon proof of such promise and breach. When the action is instituted, as it ordinarily is, by the female, and the contract and breach are sufficiently proved, if her seduction has been effected under the influence and on the sanctity of that promise the jury will consider the defloration as an aggravation of the damages. Such is the nature of the present suit: it is an action for the breach of a promise of marriage, seeking damages in money as a measurable redress for the injury sustained.

To justify a recovery which can be supported by the court, two facts must be made out by legal proofs to the satisfaction of your consciences.

*First.* That a mutual promise of marriage existed between the parties.

*Second.* That the defendant, without justifiable cause, has unlawfully and wantonly broken that promise.

Upon the establishment of these points, proper damages should be assessed by you as consequent on such violation of duty.

The declaration exhibits the rights of the plaintiff in three shapes : it, however, looks to only one contract and one breach, but presents that contract multiformed to meet the evidence, as it might be given upon a trial.

*1st count.* The first count lays the promise to have been made on the tenth day of December, one thousand eight hundred and fifty-one, and to be performed when the defendant should be thereunto afterwards requested. It is averred therein that the plaintiff has always been, and still is ready to fulfil her part, and that afterwards she requested the defendant to marry her ; and that, for the purpose of deceiving and injuring her, he wholly refused so to do. No such promise has been proved, nor has any such request been made ; and it must be conceded by the counsel for the plaintiff that a recovery cannot be had upon that count.

*2d count.* The second count lays the mutual promise of marriage to have been made on the tenth day of December, one thousand eight hundred and fifty-one, to be performed in a reasonable time then next following. It is therein averred that, confiding in the promise, the plaintiff has remained unmarried and ready to marry him, and that a reasonable time for him to marry has had elapsed since the promise. Yet that, contriving to injure and deceive the plaintiff, the defendant has not, and would not in a reasonable time marry her, and has neglected so to do.

*3d count.* The third count lays the mutual promise of marriage to have been made on the tenth day of December, one thousand eight hundred and fifty-one ; that in consideration that the female, at the defendant's request, had promised to marry him, he undertook and promised to marry her. It then averred that, confiding in his promise, she had remained single and ready to marry him, and is still ready, and that although, after making the contract, the plaintiff had requested the defendant to marry her, and although a reasonable time for him to marry her hath elapsed since the promise, yet that, contriving to injure and deceive her, he would not, when so requested, marry her, but, on the contrary, when so requested, he wholly refused then or ever to marry her.

The damages are laid at $2000. The plea is *non assumpsit*, and the issue joined has fairly opened to the parties the line of prosecution and defence which. have been adopted. Your minds should be confined, in the first place, to the inquiry whether any promise of marriage is proved which will sustain either of the two counts last set out.

It is manifest that the plaintiff could not produce direct evidence of any express promise of marriage by the defendant. By the law, she was not required to do so : she can rely upon circumstances as proof, but they must be circumstances evidencing a legal mutual contract, which, alone, can support this action for pecuniary damages. The remedy is founded on morality, virtue, justice, and public policy, as a proper partial reparation for the abuse of that confidence which matrimonial engagements inspire.

There is a clear distinction, gentlemen, between a person's intention and his promise to marry. If the intention has not ripened into a declaration leading to mutual serious promises, express or implied, which amount to a betrothment, no action can be maintained.

However much we may abhor and despise the creature (because I cannot dignify such a being with the title of man) who obtains the affections of a virtuous female by a line of attentions indicating an honorable purpose of matrimony, and basely and wantonly withdraws himself without proffering marriage, the law can mete out no pecuniary redress to the victim of such heartless blandishments and falseness.

A betrothment may legally be inferred from the existence of circumstances and conduct which ordinarily accompany or succeed such a relation between the sexes. It may be established by proof of such definite reciprocal actions as unequivocally point to a previous mutual understanding that a marriage was to take place between them.

Evidence of a continued course of accepted devoted attentions, accompanied with an apparent dedication of the society and confidence of each to the other, and with mutual conduct consistent with propriety and delicacy and just marital expectations and requirements, is proper for the consideration of

a jury in settling the question of a promise of marriage, either in express terms or by a reciprocal unequivocal understanding between the parties that they were plighted to each other, and were both bound to a future nuptial consummation. No particular form of words is required. The delicacy of the female mind would shrink from such necessity. Exclusive prolonged attachment, manifested by those numerous *indicia* of mutual preferences, which are so pointed as not to be misunderstood by the parties and their friends, speaks the language of the heart, reflects the fixed intentions of the heart, and, under proper circumstances, may establish in a court of justice a serious promise of marriage between marriageable parties as firmly, conclusively, and indubitably as a written contract or an ear-witness could establish it. If from the conduct of the parties, fairly interpreted, a jury believe that a mutual engagement existed, it is sufficient proof of a promise to support an action.

If, gentlemen, you are satisfied, from the evidence in this cause, that an engagement existed between these parties, to which count in the declaration should the proof apply? The first count already has been shut out of the case.

There being no proof of any conversation between the parties respecting a contract, the second count, which is founded upon a promise to marry within a reasonable time, has not been supported. If, in your judgment the evidence supported a promise at all, it must be one to marry generally.

The legal effect of a contract of that nature is, that either party will marry the other in a reasonable time after a request so to do. Either party, therefore, after the making of such a contract, may call upon the other to fulfil it, and in case of neglect or refusal by the latter, within a reasonable period *after refusal* made, the party so calling upon the other for fulfilment may treat the betrothment as at an end, and may bring an action for a breach of the engagement.

This representation of the legal aspects of the case reproduces before you the two subjects of proof.

*First.* The promise.

*Second.* The breach.

*What* does the law require *shall* be established to constitute

VOL. IV.                                    T

a breach of such an engagement? In my judment simply this, that the defendant (although the plaintiff held herself in readiness to fulfil) had changed his mind, and had resolved not to fulfil.

The difference of opinion between the counsel, on this point in the case, regards the manner in which such purpose should be made out; the one maintaining that a request is indispensable, unless excused by proper averments in the count and by corresponding proofs; the other, insisting that if there be proof of such facts and circumstances, derived either from conduct or declarations as show an intention not to fulfil, these are equivalent to a refusal, and a request or excuse for not making one is not essential.

This question was substantially raised upon the motion for a nonsuit, and there reserved for further discussion and final adjudication at the bar of the Supreme Court.

Without intending to deprive the defendant of the ultimate benefit of that motion, if his proposition be correct, I feel at liberty partially to examine this matter before you.

Whatever may be the proof as to the time for the performance of an alleged contract, whether on request or in a reasonable time, or in a reasonable time after request, if either party imposes on himself or herself a disability to fulfil, such act necessarily excuses the performance of all conditions precedent by the other party; therefore, a marriage by one contracting party is *per se* a breach of the contract, and dispenses with a request by the other.

But, again, will nothing else dispense with a request and a categorical refusal?

I am of opinion that some acts and declarations of a party may relieve a plaintiff from proof of a technical request.

If a defendant has pursued a line of deceptive and inexcusable behavior towards the female, calculated to fix upon her mind the impression that his affections were alienated, that he was resolved not to marry her, or that he had married another, and he adds to this an aspersion of her purity, and an insinuation that she was defiled and was unworthy of honorable wedlock, the benignity of our law will not require the

deluded, disappointed, deserted, and perhaps deflowered female to present her person, as it were, a holocaust to her deceiver before the administrators of justice can favorably learn the history of her injuries.

I do not propose to repeat the facts and circumstances, and conduct, to which the counsel for the plaintiff have pointed, as dispensing with the proof of a request: they are fresh in your memory, and proper for your consideration.

If they have established to your satisfaction deception coupled with a baseness of conduct which is inconsistent with affection and with an intention to marry, such facts and circumstances may dispense with the proof of a request by the plaintiff to perform the engagement.

One other matter, as to the proofs of the plaintiff. The testimony of her brother shows that, on one occasion, he entered a room in which the parties were alone, and under such circumstances as indicated cohabitation. That development of improper liberties and indelicate familiarity cannot be received as any evidence of a promise of marriage. The promise must be fully established by proof independent of that transaction and upon other and a lawful consideration; because it might be' that his addresses to her, however deceptive and base, were intended simply to obtain illicit intercourse.

If the contract and the breach are satisfactorily made out,' you should examine the defence before settling on your verdict. It rests upon alleged fraud. This presents an important and interesting matter of consideration. A contract of this description should be looked at as evincing the feelings and intentions of the parties at the time it was made. They should be taken to have contracted with each other with reference to the state and condition in which they were, or might be supposed to have been, when the engagement was made.

The just expectations of honorable wedlock should receive from you due appreciation; they are essential for the preservation of civilized society and for the harmony of the family circle. Every male is presumed, in law, to enter into the matrimonial engagement with a pure and spotless female.

Coil v. Wallace.

If, therefore, after his engagement, he discovers that his betrothed has been deflowered, and his previous ignorance of that fact is not imputable to his own carelessness or want of observation, a wilful concealment of such fact from him should discharge him from his vow. The rule of the common law is this: that. the concealment of an important fact, which ought in good faith to have been made known, discharges the contracting party who has been the victim of the deception from all liability on his contract.

If the parties to a marital contract are not in reality what they appear to be at the time of making the engagement the contract is void.

If fraud will vitiate money contracts, and relieve persons from the performance of engagements which its taint has reached, how much more should a fraud upon the expectations from the holy estate of matrimony vitiate the deceived party from a consummation of the betrothment? Will the law compel a man to take to his embrace for life a female whom he has addressed as pure, and had promised to wed, when he shall have discovered that she has bestowed her favors on others before his attentions to her commenced? I think not.

So, also, if conduct be shown in a female after an engagement which is inconsistent with her plighted vow, it may be looked upon as a rescission of the contract on her part, and as absolving the male from all obligation to marry.

A verdict was rendered in favor of the plaintiff for $700 damages.

Upon the coming in of the *postea*, a rule to show cause why the verdict should not be set aside, and a new trial had, was obtained, upon which rule the argument was had.

The following are the reasons filed.

1st. Because there was no sufficient evidence to go to the jury of a contract of marriage having been entered into by the parties.

2d. Because the declaration did not contain any count alleging any excuse for the plaintiff not tendering herself ready to marry the defendant, or requesting the defendant to marry her; and no such tender or request was proved.

3d. The declaration had been so framed as to admit the plaintiff to prove, as an excuse for not making such tender or request, that the defendant was already married, or that any other matter of excuse existed : no sufficient evidence was given to show that the defendant was married, or that any such matter of excuse existed.

And if the court should not see fit to direct a nonsuit to be entered, then the defendant insists that a new trial ought to be granted, for the following reasons, to wit :

1st. For the several reasons already above specified.

2d. Because the charge of the judge was contrary to law.

3d. Because the verdict was contrary to evidence.

4th. Because the verdict was contrary to law.

The argument was had before the CHIEF JUSTICE and Justices OGDEN and POTTS, by Mr. *C. L. Gifford* and Mr. *Bradley* for the rule, and Mr. *Chandler* and Mr. *J. W. Miller* against it.

Mr. *Gifford.*

1. The evidence in this case is sufficient to prove a promise of marriage. Proving the fact of illicit intercourse is not sufficient for the jury to presume that it was permitted under a promise of marriage.

2. There is no request to marry proved ; and no excuse for not making request is sufficiently set forth in the declaration. 2 *Car. & Payne* 631, *Gough* v. *Furr.*

To warrant a recovery there must be proved, either a marriage of the defendant, or request and refusal, or such facts as amount to an abandonment. 2 *Stark. Ev.* 962, *n.*; 2 *Saund. Pl. & Ev.* 664; 2 *Com. on Contr.* 408 ; 1 *Moore & Payne* 239, *Phillips* v. *Cushly ;* 6 *Cowen* 258.

3. The judge erred in charging that seduction might be given in evidence in aggravation of damages.

Mr. *Bradley* cited, on first point, 2 *Barr.* 82 ; 2 *Chit. Pl.* 323, *n.* ; 15 *Mass.* 1, *n.*

Mr. *Chandler*, contra.

1. It is not necessary to prove an express promise.    1 *Saund. Pl. & Ev.* 654 ; 15 *Mass.* 1, *Whiteman* v. *Coates ;* 6 *Cowen* 254, *Southard* v. *Rexford ;* 1 *Foster's N. H. Rep.* 586, *Hoyt* v. *Morgan ;* 3 *Car. & P.* 239.

There is sufficient proof to infer contract—1, in his habits of · visiting her ; 2, in the fact that all others who had visited her discontinued their visits ; 3, that defendant told her brother, in taking her from his charge, " I will see to her, she is mine."

The proofs and *indicia,* from which such contract may be inferred, differ in different classes of society : he was a mechanic, and she a sewing girl.    These proofs were properly submitted to the jury, and their inference in this case is, perhaps, more reliable than that of the court could be.

2. Was the breach well proved ?

There need not be a categorical request.    2 *Dowl. & Ry.* 55, (16 *E. C. L.* 72) *Seymour* v. *Garside.*

Request only necessary when the promise is to marry on request.    2 *Saund. Pl. & Ev.* 666 ; *Roscoe's Ev.* 194

Conduct and circumstances may show readiness on one part, and desertion on the other.    2 *Stark. Ev.* 942; 1 *Johns. Cases* 116.

3. Seduction may enhance damages.    3 *Mass.* 73 ; *Paul* v. *Frazier ; Ib.* 189, *Boynton* v. *Kellogg.*


Mr. *Miller*, on the same side.

1. The contract to marry, like all other contracts or matters in dispute in law, may be proved by circumstantial evidence. There was such evidence fairly submitted to the jury, and the question was for them alone.    1 *Halst.* 38; 2 *Salk.* 10 ; 3 *Ib.* 16 ; 4 *Cowen* 356.

2. As to proof of breach—

Conduct and declarations which are tantamount to refusal are sufficient proof of refusal.    2 *Saund. Pl. & Ev.* 666 ; *Stark. Ev.* 941.

Where the count is on promise to marry, not on request, it is not necessary to prove a request.    *Chit. on Con.* (5th *Am.*

Coil v. Wallace.

*ed.*) 732; 10 *Mass.* 244, *Lent* v. *Manley*; 2 *Bos. & Pull.* 452, *Bristow* v. *Waddington.*

Mr. *Bradley,* in reply.

The first and second counts are out of the question; the recovery can only be under the third count, a general contract to marry.

There are three points relied upon.

1. There was no sufficient proof of contract.

2. There was no request proved.

3. That the seduction was improperly admitted in aggravation of damages.

The first two grounds entitle us to a nonsuit; the third, to a new trial.

Circumstances may prove a contract, but they must be such as cannot be explained on any other hypothesis—and the proof must be by unequivocal evidence. 15 *Mass.* 1, *n.*; *Chit. on Con.* 536; *S. C. & P.* 75.

The attentions may have been for other purposes, and the expression proved by her brother at the circus, "she is mine," may as well refer to her being his partner for the dance or for the excursion.

As to the breach, the second count, under which the recovery must be had, avers request.

The evidence here is not sufficient to maintain any count.

Defendant's neglect, though it might have excused her breach, is not a breach on his part.

Besides, here he went away in May and the writ was served in July.

3. As to the damages, the case in 2 *Barr.* refutes the prior cases.

And a woman cannot, in any form of action, recover damages for her own seduction; she is in like fault with her seducer.

The CHIEF JUSTICE. The defendant asks that the verdict rendered in this cause be set aside, and judgment of nonsuit

entered, on the ground that the evidence offered on the trial was not sufficient to sustain the action.

1. Because there was no sufficient evidence to go to the jury of a contract of marriage having been entered into by the parties.

To sustain the action there must be proof not only of a promise by the defendant, but of mutual promises. 1 *Roll. Ab.* 5, 22; 2 *Saund. Pl. & Ev.* 665.

It is not necessary that the promise should be expressly proved; it may be inferred from circumstances. *Chit. on Con.* 536; 2 *Saund. Pl. & Ev.* 665.

In the nature of things, it is impossible to designate by any fixed rule the circumstances from which an inference of an existing promise of marriage may legitimately be drawn. It depends in great measure upon the customs and usages of social life; indeed, the acts and conduct of parties which may satisfactorily indicate the existence of a mutual engagement are in many cases the result of the arbitrary usages of society; acts which, in one circle of society, would be regarded as a clear indication of an existing engagement, in another sphere of life would be totally insignificant. The force of the circumstances it is peculiarily the province of the jury to decide. If the circumstances be relevant, and the existence of the engagement be a legitimate inference more or less clear from the evidence, the verdict should not be disturbed.

In the present case, the evidence in proof of the engagement is not of a very decisive character. The evidence consists in frequent visits during the course of several months, during which the parties were left alone; a single visit paid by the parties in company to a relative of the plaintiff, at a distance from her residence; the fact that, after the plaintiff's visits had been continued for some time, other young men who had previously visited the plaintiff ceased to visit her. In addition to these circumstances, it is shown that during the period when the defendant was visiting the plaintiff, she, on one occasion, went, accompanied by her brother, to a circus. While at a public house, she was joined by the defendant. On her brother's proposing to go home, the plaintiff wished

Coil v. Wallace.

to remain. The defendant, standing by her side, said, "I will see her home; I will take care of her; she is mine you know." The brother replied, "Very well; I will leave her in your charge." The plaintiff, at the time, was in a public place, away from her home, where she needed a protector. The defendant asks that she shall be left under his care and protection, and, to enforce his request, uses the language referred to. Is not the fair and legitimate conclusion, from the defendant's language under the circumstances, that which was drawn by the jury, viz. that she was his by promise of marriage? It is no answer to say that the words may admit of another interpretation. The question is, whether the inference drawn by the jury is not a fair and legitimate inference. If it was, it was their province to decide upon the true import of the language. The view expressed by the court in *Weaver* v. *Bachart*, 2 *Barr.* 80, that because the language used by the defendant was equivocal the jury were not justified in inferring a promise of marriage, would seem to wrest from the jury their province of deciding upon the sense in which, under the circumstances, the language was used. If the language would at all fairly bear the interpretation put upon it by the jury, it was appropriately their province, not the province of the court, to decide upon its true meaning. The evidence offered upon this point was competent; its effect was fairly submitted to the jury; the conclusion at which they arrived was a legitimate deduction from the evidence. It cannot be said that upon this point the verdict was either without evidence or against the evidence.

2. It is further insisted that the plaintiff should have been nonsuited, because she did not tender herself ready to marry the defendant or request him to marry her, and because the declaration contained no count alleging an excuse for not making such tender or request.

It is incumbent on the plaintiff to prove not only the contract of the defendant, but the breach of that contract. She may show either that the defendant, by marriage, has put it out of his power to perform the contract, or that, upon request made, he has refused to perform, or that he has, by acts or

words, manifested an unequivocal intention not to perform his contract, and thereby rendered a demand and refusal necessary. Conduct and declarations which are equivalent to a refusal are sufficient evidence. 2 *Saund. Pl. & Ev.* 666 ; *Roscoe on Ev.* 194.

The evidence shows that, after a constant course of attention by the defendant to the plaintiff for some months, he suddenly ceased his visits about the month of April, 1852; that he soon after left the neighborhood, and removed to Newark, where he remained till the commencement of the suit, about the last of July. During this period, he never saw or corresponded with the plaintiff. He spoke to others of her dishonor. He represented to the attorney of the plaintiff that he was married, and expressed to his uncle the wish that the impression should prevail in the plaintiff's neighborhood that he was actually married. The jury were warranted from these circumstances, aside from the defendant's declarations made after the arrest, to infer that he had determined not to marry the plaintiff. Under such circumstances, a formal request and refusal is unnecessary. *Johnson* v. *Caulkins*, 1 *Johns. Cas.* 116 ; *Willard* v. *Stone*, 7 *Cowen* 22.

3. The defendant asks that the verdict be set aside, and a new trial granted, on the ground that evidence of the seduction of the plaintiff by the defendant subsequent to the promise of marriage was improperly admitted in evidence as matter of aggravation.

This evidence was held to be incompetent by the Supreme Court of Pennsylvania, in *Weaver* v. *Bachart*, 2 *Barr.* 80, and in 8 *Watts & Serg.* 27, and by the Supreme Court of Kentucky, in *Bucks* v. *Shain*, 2 *Bibb* 343.

In *Paul* v. *Frazier*, 3 *Mass.* 71, C. J. Parsons, in delivering the opinion of the Supreme Court of Massachussetts, said, " as the law now stands, damages are recoverable for a breach of promise of marriage ; and if seduction has been practiced under color of that promise, the jury will undoubtedly consider it as an aggravation of the damages." That, however, was not the point decided. In *Boynton* v. *Kellogg*, 3 *Mass.* 181, the

declaration, was for a breach of promise of marriage, and the seduction, and consequent pregnancy.

The evidence has also been held competent, after full discussion, by the Supreme Court of Tennessee and of Missouri. *Corr* v. *Wilson*, 2 *Overton* 233 ; *Green* v. *Spencer*, 3 *Missouri R.* 318.

The evidence was offered, and admitted, so far as appears without exception, in *Johnson* v. *Caulkins*, 1 *Johns. Cas.* 116.

In *Coryell* v. *Colbaugh*, *Coxe* 77, the fact of the seduction was in evidence, and the Chief Justice, so far from cautioning the jury against being influenced by the fact of the seduction, appears to have urged it upon their consideration, as a ground for exemplary damages.

Upon strict legal principles applicable to ordinary *actions on contracts*, the evidence is clearly incompetent ; because in actions upon contracts damages are to be limited to the consequences of the breach. Now it is not true, in any sense, that the seduction is a consequence of the *breach* of the contract. The ground of aggravation is, that the seduction was accomplished by means of the contract, while it was in force, and before the breach.

But the action for a breach of promise of marriage, though in form an action ere contracted, partakes more, so far as the question of damages is concerned, of the nature of an action for *tort*. Though the pecuniary loss is the ground of damages claimed, it is never regarded as the real object of the suit or as the measure of damages. Ostensibly brought for one wrong, (like the *per quod* action for the seduction of a daughter) its real object is to redress another.

In this respect, an action for a breach of promise of marriage constitutes an acknowledged exception to the general rule regulating damages in actions upon contract. *Sedgwick on Damages* 213.

In *Southard* v. *Rexford*, 6 *Cowen* 254, the court charged the jury, that in this action damages are always in the discretion of the jury, and in fixing the amount they have a right to take into consideration the nature of the defence set up by the defendant ; and if, upon the trial, he attempt to justify his

breach of contract by falsely aspersing the plaintiff's character, the jury would be justified, upon that ground, in giving exemplary damages. . The court at bar held, that upon the question of damages the charge was unexceptionable; that the damages rest in the sound discretion of the jury under the circumstances of each particular case.

The same view was taken by C. J. Kinsey, in his charge to the jury in *Coryell* v. *Colbaugh*. Courts, in fact, have looked through the form of the action to the substance—beyond the ostensible, to the real object of the action.

Viewing the action in this light, no circumstance can give to the injury inflicted upon the plaintiff a deeper dye, or impart to the wrong committed by the defendant a darker shade, than the fact that he used a promise of honorable marriage as a means to betray and ruin his victim. The error consists in applying to this action the rules which govern the ordinary action upon contract. They have no application. It may safely be affirmed that every man of correct feeling would at once, and by an instinctive impulse which no argument could control, place his finger upon the fact of seduction as the fact which, above all others, gives character and coloring to the whole transaction. And it may be further affirmed that, so long as the human breast remains what it is, whatever the law may decide, or a judge may declare, jurors in an action for a breach of promise of marriage will know whether the plaintiff has been ruined under color of the defendant's promise, and will measure their damages accordingly.

If the question were now for the first time to be decided, however incongruous and inconsistent with general principles the practice may seem, it would not be wise to apply another measure of damages. But, since the case of *Coryell* v. *Colbaugh*, the practice in this state is settled, and there is no reason to disturb it.

But, aside from the principle involved, there is a decided reason in this case why the motion on this point should not prevail. The evidence on the trial was received without objection; no exception was taken or suggested to its incompe-

Coil v. Wallace.

tency. The cause was manifestly tried by counsel and by court under the impression that the evidence was competent.

It is not assigned, as a reason for a new trial, that the evidence was incompetent: no exception was taken to the charge of the judge upon that point at the trial. On this ground, therefore, as well as upon the other, the objection to the verdict cannot prevail.

The motion for a new trial must be denied.

OGDEN, J. The defendant resists the entry of a judgment upon the verdict on three distinct grounds, which will be examined in the order in which his counsel presented them, upon the argument of the rule.

*First.* He contends that the plaintiff should have been called, because there was not sufficient proof of a contract to put the case to the jury.

The plaintiff produced no proof of an express promise. She offered witnesses, who testified that the defendant had visited her for three or four years; that he sought her society; that, when in company together, he usually devoted himself to her; that after her return from a visit at Easton, in 1851, his attention to her was very marked and exclusive; and that he was received and esteemed by the family as a suitor intending marriage. That when she was taken by one of her brothers to see a circus, a few miles from their residence, the defendant joined them there, and solicited the brother to leave her in his charge, using this language: " I will take care of her; " " I will see her home; " " she is mine, you know; " to which the brother replied, " Very well; " " I will leave her in your charge." That their intimacy *increased* from that time, and entire confidence was reposed in him by the family; that after her return from Easton, and after the visit to the circus, she wrote to him, on a Saturday, informing him that she would not be at home *that* evening; that she went away, returned the next day, and defendant came to see her the evening of her return. Other matters were shown to the jury manifesting the confiding intimate relation which the parties held towards each other. The justice who presided at the circuit instructed

the jury, that to maintain the action, the law did not require a female to produce direct evidence of an *express* promise to marry, but that she might rely upon circumstances evidencing a legal mutual contract. He likewise, in the same connection, told them that an *intention* to marry, which had not grown into mutual serious promises, either express or implied, amounting to a betrothment would not support the action; and also, that a promise to marry could not be inferred from illicit intercourse. The jury were restricted to the consideration of such circumstances and facts as could tend to show that an engagement existed between the parties, and the only question in disposing of the first objection is, whether there was sufficient legal evidence of a promise to permit the case to go to the jury: if there was, its strength was to be determined by them.

The law is well settled that, to support an action of this character, a positive express promise to marry in "*totidem verbis*" need not be proved. It may be evidenced by the unequivocal conduct of the parties, and by a general yet definite and reciprocal understanding between them, their friends and relations, evinced and corroborated by their actions, that a marriage was to take place. *Chit. on Cont.* 537; *Wightman* v. *Crater*, 15 *Mass.* 1; *Peppinger* v. *Low*, 1 *Halst.* 384, and other cases.

A betrothment may legally be inferred from the proof of circumstances and conduct which ordinarily accompany or succeed such a relation between the sexes, pointing to a future intermarriage. Evidence of a continued course of accepted and devoted attentions by the male to the female, accompanied with an apparent dedication of the society of each to the other, and the manifestation of reciprocal confidence, and with mutual conduct consistent with proper delicacy and just marital expectations and requirements, is proper for the consideration of a jury in settling the question of the existence of a promise of marriage, whether made in express terms, or by a reciprocal unequivocal understanding between the parties that they were plighted to each other, and were bound to a future marriage.

Female delicacy shrinks from the stern necessity of the use of formal technical contracting language or of the proof of an express promise in terms. The privacy with which such arrangements are usually made, and the general custom of society respecting them, render the production of such degree of evidence almost impossible. Exclusive prolonged attachment, manifested by those numerous *indicia* of mutual preference, which are so pointed as not to be misunderstood by the parties or their friends, speaks the language of the heart, reflects the fixed mutual intentions of the heart, and *may* be sufficient to establish in a court of justice a serious promise of marriage between marriageable parties as satisfactorily and indubitably as a written contract or an earwitness to an offer and acceptance could establish it. The conduct of the parties, fairly considered, *may* be sufficient proof to support a mutual promise of marriage. This character of proof is recognised in *Clark* v. *Pendleton*, 20 *Conn.* 495.

I am of opinion that there should not be a judgment of nonsuit upon the first ground.

The next ground taken for resisting a judgment upon the verdict is, that there was no proof before the court and jury that the plaintiff, previous to commencing her action, requested the defendant to marry her, nor an averment in the declaration of an excuse for not making such request.

The plaintiff offered *no proof* of a request upon the defendant to marry her. It appeared in evidence that the parties had lived for a long time in the same neighborhood in Morris county, and that the defendant, in May, 1852, moved to the city of Newark ; that he did not return to visit the plaintiff, and had no further communication with her, that, in the month of July, and before the suit was commenced, a person went to Newark to see the defendant, in behalf of the plaintiff, with authority to express her readiness to marry him, and to request him to fulfil his engagement of marriage ; that the agent (having heard a rumor that he *was* married, or about to be married,) saw the defendant, on the 26th or 27th of July, at his boarding place in Newark, and said to him, "I did not expect to find you at home, as I heard you had just been

getting married." He asked defendant if it was true "that he had just been taking a rib;" to which the defendant replied, "I suppose that it is so," or "I suppose that it is a fact," or words to that effect. The defendant then asked that person where he had heard it, or who had told him. The defendant, in a subsequent conversation on that day with his uncle John D. Wallace, in referring to the interview between the agent of the plaintiff and himself, said, "they have got it up there that I am married, and I wish you had let them have it as they wanted." It also appeared that, when he was arrested, he declared that the plaintiff was a girl of bad character, and that he never should marry her. What constitutes a breach of engagement to marry? Is it not complete if when one party has remained and continues in readiness to fulfil the contract, the other has resolved not to fulfil it.

The question here raised is; whether *any* conduct on the part of one party, prior to the commencement of an action against him or her, will dispense with *proof* of a request to marry, or of an excuse for not making the request, in support of a proper averment thereof in the count. If either party to a marriage contract, with no definite time fixed for its consummation, marries another, the ability to perform the prior engagement is taken away, and a request so to do, made with a knowledge of that fact, would require the party to commit an offence against the laws of society; hence an averment of such marriage in the declaration, and corresponding proof thereof is sufficient evidence of a breach without a request and refusal. Such act, *per se*, excuses the other party from the performance of all precedent conditions. An averment, however, without proof of the fact, would not avail a party any thing who, on the trial, should *rely* upon that *fact* as an excuse for omitting to make a request. Where it is alleged that the defendant has married another, the fact must be proved. 2 *Saund. Pl. & Ev.* 666.

This plaintiff, when the suit was commenced, may have supposed that the defendant was married, and her attorney may, at that time, have intended to make in his declaration the averment of the prior marriage; but after the service of the

writ, and before the filing of the pleading, it may have been discovered that the defendant had not married another, and that such averment, if made, could not be proved. If so, is there nothing in the evidence produced which should justify the court in ruling that a *request* was not necessary, and that the action could be maintained without an averment of an excuse for not making one? Or should the plaintiff be turned out of court, and be compelled to make a request?

What was the *legal* effect upon the rights of the parties of the defendant's admission to the attorney and agent of the plaintiff that he had married another female?

The direct influence upon Mr. Chandler was to prevent him from requiring the defendant to marry his client. It satisfied him, at the time, that the alleged contract to marry was broken by the defendant having put himself under a legal disability to perform it; and it prevented him from making a request of the defendant to perform it.

Can this party, after his admissions have been acted upon by Mr. Chandler in behalf of the plaintiff, escape from the effect of the consequences directly and naturally resulting from those admissions? *Unquestionably he cannot.*

Admissions which have been *acted upon by others* are conclusive against the party making them, in all cases between him and the person whose conduct he has thus influenced. It is of no importance whether they were made in express language to the person himself, or implied from the open and general conduct of the party. In such cases a party is estopped, on grounds of public policy and good faith, from repudiating his own representations. It makes *no difference*, in the operation of this rule, whether the thing admitted be *true or false*, it being *the fact that it has been acted upon* that renders it conclusive. 1 Greenl. § 207, 208.

Deceptive and inexcusable conduct upon the part of the male towards the female may likewise excuse her from requesting him to marry. If he adopts a line of behavior inconsistent with sincere attachment and an intention to marry, and calculated to impress her mind with a belief that he has abandoned her, that his affections have been alienated, and

that he has resolved not to marry her, he dispenses with the necessity of her establishing the breach, by producing proof of a request on her part, and a refusal by him.

The second objection against the legality of the recovery in this case is not well taken, and the plaintiff should not be non-suited.

The last ground on which the defendant relied is an alleged misdirection by the justice upon the subject of damages.

The jury were instructed that an action for seduction would not lie in New Jersey; but if in a suit for a breach of promise of marriage, the contract and breach being sufficiently proved, " *aliunde*," it should appear in evidence that the seduction of the female had been effected after the promise, under its influence, and upon its sanctity, they might consider that as an aggravation of the damages.

I am not now prepared, upon review, to question the legality of that ruling, either upon principle or from authorities. The argument made against it was, that seduction forms a part of the measure of damages in an action *per quod*, &c., instituted by the person entitled to the services of the female; and, therefore, a defendant might be twice mulcted in damages for the same violation of duty. (This C. J. Wilmot, in the case of *Tullidge* v. *Wade*, thought would be so much the better, for he *ought* to be punished twice.   3 *Wils.* 18.)

That action is a remedy for an injury done to the relative rights of a party; a parent, merely as such, cannot maintain it.   Loss of services is the *gist* of that action, and it cannot be supported without proof of the existence of a right to the service at the time of seduction by the defendant, and of consequent damages.   If the act be committed by an illegal entry upon the master's possession, trespass may be supported without proof of loss of service or special damages; but if the defloration be effected away from his possession, and no loss of service follows by the female's sickening, and no pecuniary expense be caused by her subjecting her master to the payment of a physician's or other bill, or in taking care of her, or, in other words, if conception does not follow or special actual damage be sustained by the master or parent, an action

for the seduction cannot be maintained. In such a case, however, the purity of the victim has been tarnished, her chastity destroyed, and her prospects in life darkened. Who can be better entitled to recompense in damages for the personal injury than the female upon whom the natural and proximate result of the faithless act has fallen? Although, upon grounds of policy, an action for *seduction* cannot be maintained by the seduced party, yet if she gets a "*locus standi*" in court by an action for a breach of promise of marriage, and makes sufficient legal proof of the promise and breach, I can conceive of no sound reason why, in estimating the damages, a jury may not lawfully take into their consideration the fact of her defloration after the mutual engagement to marry.

Exemplary damages are allowed and called for in actions of this nature. The jury are bound to no definite or precise rule of assessment, but they may give such an amount of damages, not flagrantly excessive or disproportionate to the injury, as will mark their disapprobation, and deter others from the violation of such sacred promises.

In the case of *Berdan* v. *Kip, Spenc. Rep.* 239, a judgment of the Circuit Court of the county of Bergen was reversed in this court because, in a *per quod* action by the father, the judge had allowed the plaintiff to prove a promise of marriage made to his daughter by the defendant, after the illicit intercourse, in explanation of the fact relied on by the defendant, that he was permitted to continue his visits in the family after the father knew of his daughter's pregnancy. The ground on which this court put the reversal is, that a breach of a promise of marriage is a distinct cause of action in favor of the female with which the parent has nothing to do, and against which the party might not *then* be prepared to defend himself; and that the evidence of it being before the jury for any purpose, they might be influenced by it in making their assessment, even against their own determination not to consider it.

The seducer is permitted, in mitigation of damages, to make use of the fact, that the parent, after having knowledge of the illicit intercourse, permitted him to continue his visits in the

family; but, by the case referred to, the parent is not allowed to explain and vindicate his conduct by showing that partial reparation was proffered by a subsequent promise of marriage.

This decision, which seems to have been one of first impression, most certainly throws around destroyers of domestic peace and purity as much protection as should be asked in civilized society. It cannot be relied on as controlling the present case, nor does it establish that the converse of the proposition which it defends must be law.

The only report of a case where the present question appears to have been raised in this state, is found in *Coxe's Rep.* 77, *Coryell* v. *Colbaugh.*

That was an action for a breach of promise of marriage, tried before Chief Justice Kinsey. After the promise was fully proved, the defendant, in mitigation of damages, offered to prove that an action had been brought by the plaintiff's father against the defendant for seduction, and upon its being left to arbitrators, they, by the consent of parties, had gone into the whole inquiry, both as to the seduction and the promise of marriage, and had awarded exemplary damages upon a consideration of the whole case : and it was argued that, unless the evidence was admitted, a double recovery would be had.

The court refused to receive the testimony, and, in charging the jury, the Chief Justice said, that the injury complained of was of the most atrocious and dishonorable nature, and called for exemplary damages. He told the jury that they were not to estimate the damages by any particular proof of suffering or of actual loss, but to give them for example's sake; that they must consider not only the past injury, but every consequence in future.

In a case reported in 3 *Mass.* 71, *Paul* v. *Frazier*, it is ruled that an action will not lie at common law by a female against her seducer, under false pretence of courtship and intention of marriage. The learned Chief Justice Parsons observed, in his opinion, that, " as the law now stands, damages are recoverable for a breach of promise of marriage; and if seduction has been practised under color of that promise, the jury will undoubtedly consider it as an aggravation of the da-

mages. So far the law has provided, and we do not profess to be wiser than the law."

The same result is reached in *Wells* v. *Padgett*, 8 *Barb. S. C. Rep.* 323 ; *Tubbs* v. *Van Kleek*, 12 *Illinois Rep.* 446 ; *Whalin* v. *Layman*, 2 *Blackfan* 194 ; *Coun* v. *Wilson*, 2 *Overton's Tenn. Rep.* 233.

The cases relied on as maintaining a contrary doctrine, are *Bucks* v. *Shain*, 2 *Bibb's Kentucky Rep.* 343 ; *Weaver* v. *Berchett*, 2 *Barr's Penn. Rep.* 80.

The first of those cases differ from the present, in that it therein appears that the promise of marriage was made *after* the seduction. Hence the seduction could not have been effected upon the faith and sanctity of the promise, and damages occasioned before the promise was made, could not be taken as consequences of the breach.

The case in Pennsylvania seems to have been put upon the case in Kentucky as an authority. Its reasoning is based upon the mutual imprudence of both parties to an illicit intercourse. The case is not satisfactory to my mind, and I am not prepared to adopt its conclusions as law in New Jersey.

Actions of this nature must be considered as anomalous, and not subject to the application of the strict rules which regulate recoveries in demands for breaches of contract regarding property. The injury to a woman from her seduction is made up of the pain she suffers from shame, the loss she sustains in her reputation and prospects of marriage, and of the depravation of her moral principle. Withholding these considerations from the mind of a jury when assessing damages for a breach of promise of marriage, upon the faith of which promise the female has been drawn from the path of virtue, would be repugnant to our ideas of justice, and could not be defended, unless upon some inflexible principle of law inseparable from the case. *Sedgwick*, in his work on damages, p. 368, uses this language : "An action for a breach of promise of marriage, though nominally founded on the breach of an agreement, presents a striking exception to the general rules which govern contracts."

Coil v. Wallace.

The portion of the charge complained of was not incorrect, and the verdict should not be disturbed.

If I entertained serious doubt upon the abstract point involved in the direction of the court at the circuit, I should not feel willing to grant a new trial. Substantial justice was done by the verdict.

The seduction of the plaintiff was a part of the *res gestœ*, proved without objection, and so interwoven with the evidence that if the court had directed the jury to disregard it, the verdict would not probably have been for a less amount.

The rule to show cause should be discharged with costs, and final judgment be entered upon the verdict.

POTTS, J. I am not able to assent to the doctrine, that in an action for breach of promise of marriage, the plaintiff can legally give in evidence her seduction by the defendant in aggravation of damages. She cannot have an action for seduction; she cannot recover damages directly for such an injury. This is the result of principles as well fixed and established as any in the law. She is a party to the mischief, in the eye of the law equally guilty with her seducer; and I cannot see, with this well established doctrine standing in the way, how she can be allowed to recover damages for the seduction under the form of an action for breach of promise.

But here the evidence was not excepted to at the trial, nor was that part of the charge specifically excepted to which instructed the jury that such evidence might be considered in aggravation of damages; and for this reason I am willing to concur in the result at which my brethren have arrived, agreeing with them entirely, as I do, upon the other parts of the case.